United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Andrea Rosen Liebman, Appellant, ) | |
| ) | |
| v. ) | Bankruptcy Appeal |
| ) | Case No. 20-20322-Civ-Scola |
| Ocwen Loan Servicing, LLC and ) | |
| Futura Miami Invest LLC, Appellees. ) | |

## Order Affirming Bankruptcy Court

This matter is before the Court upon Debtor-Appellant Andrea Rosen Liebman's appeal from various final orders entered by the United States Bankruptcy Court for the Southern District of Florida in connection with the Debtor's February 25, 2015 Chapter 13 petition (the "Petition") for bankruptcy protection and the ultimate foreclosure sale of her home. This is the Debtor's third appeal to this Court and, taking into account appeals in related state court proceedings and to the Eleventh Circuit, this is the Debtor's seventh appeal arising from the facts underlying the Petition. While the Petition temporarily delayed the foreclosure of the Debtor's home, that home was eventually foreclosed upon by Appellee Futura Miami Invest, LLC ("Futura"). (ECF No. 27 at 10.) Appellee Ocwen Loan Servicing, LLC ("Ocwen") serviced the loan on behalf of non-party Deutsche Bank National Trust Company, which held the mortgage over the subject property. The crux of this appeal concerns certain collateral aspects of final orders. Although the appeal raises issues relating to the foreclosure itself, those issues, as discussed below, have already been resolved by this Court's rulings, which were subsequently affirmed on appeal to the Eleventh Circuit. Having reviewed the Appellant's amended brief (ECF No. 24), the Appellees' response (ECF No. 27), and the Appellant's amended reply (ECF No. 31), as well as the record and the relevant legal authorities, the Court finds no error and **affirms** the bankruptcy court.

1. **Background**

This case involves a somewhat complicated procedural history and posture. This is the parties' third appearance before this Court, having been here twice before on appeals from the bankruptcy court. This case has also made two trips to the Eleventh Circuit, one resulting in a dismissal on jurisdictional grounds and the other resulting in an affirmance of this Court's decision on the Debtor's second appeal. *Liebman v. Ocwen Loan Servicing, LLC*, No. 17-22874-CIV, 2018 WL 527975, at *3 (S.D. Fla. Jan. 22, 2018) (*Liebman II*) (Scola, J.), *aff'd sub nom. In re Liebman*, 772 F. App'x 839 (11th Cir. 2019).

*Liebman II* details the case's considerable history and what follows is background context to the extent that it is pertinent to the instant appeal.

This case began when the Debtor filed a voluntary Chapter 13 Petition in the bankruptcy court on February 25, 2015. (ECF No. 27 at 9.) The commencement of the bankruptcy case stayed the foreclosure sale of real property located at 3732 NE 167 Street, #41, North Miami Beach, Florida 33160 ("Property"), which was scheduled by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Foreclosure Action"). (*Id.* at 9-10.) However, the Debtor's bankruptcy case was dismissed and, on April 1, 2015, the state court entered an order resetting the foreclosure sale for May 14, 2015. (ECF No. 27 at 10.)

Appellee Futura was the successful bidder and purchased the Property for $270,500.40. (*Id.*) From the purchase price, Ocwen was paid $226,352.05 and the condominium association, Beach Club Villas, obtained surplus funds of $37,847.95. (*Id.*) Following the foreclosure and payments to creditors, the Debtor and her spouse filed four separate state court appeals regarding the Foreclosure Action. (*Id.*)

On April 9, 2015, the bankruptcy court granted an emergency order to reinstate the bankruptcy case. (*Id.* at 10.) The reinstatement order limited the automatic stay to the reinstated case, specifically excluding the previously pending Foreclosure Action from being stayed. (*Id.*) However, on April 21, 2015, the bankruptcy court *orally* granted the Debtor's separate motion to stay the foreclosure sale, which the bankruptcy court granted. (*Id.*) Notwithstanding the oral order staying the foreclosure sale that was under the auspices of the state court, the Debtor's counsel failed to submit a proposed order memorializing the oral ruling in advance of the foreclosure sale, so the sale proceeded in the state court Foreclosure Action. (*Id.* at 12.) The Debtor then filed an emergency motion for an order to show cause why Ocwen participated in the foreclosure sale that was forestalled by the bankruptcy court's oral order. (*Id.*) That emergency motion was denied because the sale took place "as a result of the failure of counsel for the Debtor to promptly and timely submit" a written order, which was necessary to enable the state court to stay the foreclosure. (*Id.*)

Ultimately, the Petition was dismissed because the Debtor failed to present a confirmable plan. (*Id.* at 14.) The Debtor's first appeal to this Court challenged the bankruptcy court's dismissal of the Petition on various grounds, some of which, as discussed below, are rehashed in this appeal. That first appeal resulted in a partial remand of several issues for the bankruptcy court's reconsideration. Upon reconsideration, the bankruptcy court revisited certain prior rulings, but concluded again that the foreclosure sale to Futura was

properly completed. (*Id.* at 16-17.) The Debtor again appealed to this Court, which found no merit to the Debtor's arguments and affirmed the bankruptcy court.

However, while the second appeal to this Court was pending, the parties were before the bankruptcy court to address "the Chapter 13 Trustee's confusion over how to disburse the funds paid on behalf of [the Debtor] which remain in the Trustee's account." (*Id.* at 20.) "The Chapter 13 Trustee previously sought clarification as to how she should disburse vested funds paid to her by the Debtor during this case and after dismissal of this case." (*Id.*) Specifically, "[t]he Debtor's last proposed plan provided for payments to the secured creditor, Ocwen, and Debtor's homeowners association, but Debtor's property was foreclosed during this case so the Trustee was uncertain as to whether to pay Beach Club and Ocwen any additional amounts from the funds she ha[d] on account." (*Id.*)

The bankruptcy court "directed that all funds paid by the Debtor *after* dismissal of the case be refunded or returned to the Debtor." (*Id.* (emphasis in original).) "The court also authorized payment from the remaining funds to Debtor's former counsel in the amount of $5,000, based on the parties' agreement." (*Id.*) The bankruptcy court "further directed Ocwen and Beach Club to account for the funds they received from the Trustee in this case to determine if overpayments were made." *Id.* At a hearing held on May 24, 2018, Ocwen argued that the "Debtor's incessant litigation caused it great expense, far exceeding any amount sought to be disgorged, but nonetheless agreed to return to the Debtor all funds it received from the Trustee in this case, $11,383.83, in an effort to resolve this matter." (*Id.*) The bankruptcy accepted the proffer, to which the Debtor did not object. (*Id.*) Ocwen further agreed to pay the Debtor within 30 days and she did not need to provide Ocwen with a W-9 in exchange for the disgorgement payment. (*Id.*)

The Debtor thereafter filed a Motion and Amended Motion for Relief from Judgment, Motion for Contempt, Motion for Punitive Damages and Motion for Further Stay of Execution arguing that she was entitled to damages "as a result of concealment of information, fraud upon the Court and other wrongdoing." (*Id.* at 21.) The bankruptcy court found "no grounds to support granting [the] Debtor the relief she is requesting" as her "rendition of the facts in this case do not comport with the record facts, and the facts of record do not support an award of damages." (*Id.*) The bankruptcy court explained that "[t]he secured creditors in this case have done nothing wrong, and the Debtor has not provided a sufficient basis for the various claims for relief that she is requesting." (*Id.*) The bankruptcy court found "no reasonable basis to stay the disbursements to the Debtor." (*Id.*) Accordingly, the motion was denied. (*Id.*)

Two days after that order was issued, the Debtor filed an Emergency Motion to Stay Disbursement, which the bankruptcy court stated has "no basis stated therein to stay the disbursement of funds to the Debtor by the Chapter 13 Trustee." (*Id.*) The motion also "fail[ed] to set forth any grounds for a stay" and it was denied. (*Id.*)

This appeal followed.

## 2. Standard of Review

A district court functions as an appellate court when reviewing a bankruptcy court's orders. *See In re Rudolph*, 233 F. App'x 885, 886-87 (11th Cir. 2007) (citing *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993)). Interpretations of the Bankruptcy Code are questions of law that this Court reviews de novo. *Pollitzer v. Gebhardt*, 860 F.3d 1334, 1338 (11th Cir. 2017). Although the bankruptcy court's legal conclusions are reviewed de novo, the district court must accept the bankruptcy court's factual findings unless they are clearly erroneous. *In re Rudolph*, 233 F. App'x at 886-87. A bankruptcy court's judgment is clearly erroneous where, "although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Paramount Citrus, Inc.*, 268 B.R. 620, 621 (M.D. Fla. 2001).

## 3. Discussion

The Debtor's brief identifies seven issues on appeal. However, several of those issues are duplicative and, where appropriate, they are addressed collectively below. At the outset, however, the Court will address the Appellees' argument that the Debtor's appeal should be dismissed for failure to comply with the Federal Rules of Bankruptcy Procedure. Rule 8014(a) provides that "[t]he appellant's brief must contain . . . a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record," and "the argument, which must contain the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. Bankr. P. 8014(a)(6)-(8). The Debtor's briefs do not comply with either requirement. The briefs contain almost no clear citations to the record and to the extent that the briefs explain the Debtor's arguments, the briefs generally jump from unadorned legal conclusions to nonbinding legal authority. On an even simpler level, and in violation of Local Rule 5.1(a)(4), the briefs are written entirely in bold font and at times appear to have no page margins at all, resulting in text that at some points runs off the page. (*See, e.g.*, ECF No. 24 at

24-25.) In sum, the first, second, and third versions of the Debtor's opening brief, and the first and second versions of her reply brief (the later being untimely and filed without leave), failed to comply with the applicable Rules are could be dismissed on the basis alone.

"When an [appellant] does not cite to the record in support of assertions of fact, the appeal is subject to dismissal for failure to comply with [Federal Rule of Appellate Procedure] 28(a)(3)," from which Federal Rule of Bankruptcy Procedure 8014 is derived. *In re Suncoast Airlines, Inc.*, 188 B.R. 56, 58 (S.D. Fla. 1994); *see also* Fed. R. Bankr. P. 8014 advisory committee's note to 2014 amendments. The Court agrees with the Appellees' argument that the degree of the Debtor's noncompliance with the applicable Rules warrants dismissal of her appeal. *Morrissey v. Stuteville (In re Morrissey)*, 349 F.3d 1187, 1190-91 (9th Cir. 2003) (dismissal for noncompliance with procedural rules is proper, without explicit consideration of alternative sanctions, where procedural deficiencies are numerous and egregious). Dismissal is warranted even though the Debtor is proceeding *pro se* because this particular *pro se* party has been through at least five appeals in this Court and the Eleventh Circuit in this same case, and all five of the briefs remain exceedingly noncompliant despite the Court's warning concerning the form and length of the briefs (ECF No. 22). Nevertheless, the Court will rule on the merits as set forth below while, as requested in the Debtor's seventh argument, liberally construing the *pro se* pleadings.

### a. Purported Misapplication of the *Stockwell* Factors

The Debtor's first argument is that the bankruptcy court misapplied the factors set forth in *In re Stockwell*, 262 B.R. 275 (Bankr. D. Vt. 2001). This is the third time that the Debtor has appealed to this Court arguing that *Stockwell* was misapplied below. The first time that issue was brought here, this Court agreed and remanded for, *inter alia*, reapplication of the *Stockwell* factors. *Liebman II*, 2018 WL 527975, at *6. The second time the *Stockwell* issue was brought here (*i.e.*, after the factors were reapplied on remand), the Court approved of the bankruptcy court's reapplication of the *Stockwell* factors. *Liebman II*, 2018 WL 527975, at *5. Indeed, that issue was appealed to the Eleventh Circuit, which held that the Debtor "ha[d] not presented any arguments or evidence suggesting that the bankruptcy court inappropriately applied the Stockwell factors, which are the factors a bankruptcy court must consider in determining whether to grant a retroactive stay." *In re Liebman*, 772 F. App'x at 841.

The Court finds that the law of the case doctrine precludes review of the Debtor's *Stockwell* argument for a third time. *Original Brooklyn Water Bagel*

*Co., Inc. v. Bersin Bagel Grp., LLC*, 817 F.3d 719, 728 (11th Cir. 2016) (holding that the "law of the case" doctrine establishes that the "conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal"); *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir. 1990) ("[F]indings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.") (citation omitted). Accordingly, the Court declines to rehash the *Stockwell* argument, which was already rejected by the Eleventh Circuit.

### b. Whether the Bankruptcy Court's Remand Order Was an Abuse of Discretion

The Debtor's second and third arguments are that the bankruptcy court abused its discretion when it entered an order (the "Remand Order") modifying an earlier dismissal order. At the outset, this issue is also barred by the law of the case doctrine as set forth above in connection with the Debtor's argument concerning the *Stockwell* factors. The Debtor seems to be making the argument that the bankruptcy court erred in not reinstating the bankruptcy stay to block the foreclosure of her home. However, these arguments were already presented to, and rejected by, this Court in *Liebman v. Ocwen Loan Servicing, LLC*, No. 17-22874-CIV, 2018 WL 527975, at *3-4 (S.D. Fla. Jan. 22, 2018) (Scola, J.), *aff'd sub nom. In re Liebman*, 772 F. App'x 839 (11th Cir. 2019). This Court reviewed these very same arguments and concluded then, as it does again now, that "Liebman has not convinced the Court that the bankruptcy court erred in declining to vacate the foreclosure sale of her home." *Id.* at *4. There is no legal basis for the Debtor to receive yet another opportunity to reargue her appeal regarding the Remand Order simply because she continues to disagree with the bankruptcy court, this Court, and the Eleventh Circuit.

The Debtor's fourth argument is that reinstatement of the bankruptcy stay "is proper based on Ineffective Assistance of Counsel, Lack of Jurisdiction & Lack of Due Process . . . ." (ECF No. 24 at 25.) This argument appears to be based on the now-*pro se* Debtor's fee dispute with her own former counsel. (*Id.* at 27-29.) Although the details of the breakdown in the relationship between the Debtor and her former counsel are not entirely clear, it appears that at some point the relationship broke down and her former counsel stopped representing her. While the Debtor complains that her former counsel "backed down" around the time that the bankruptcy court denied an emergency motion, the Debtor does not explain how the breakdown in that relationship warrants a reversal of any particular lower court order absent a cogent argument (and none has been made) that any such order was made in error. The Court also

denies that portion of the Debtor's fourth argument claiming that her equal protection and due process rights were violated, and that the bankruptcy court lacked jurisdiction. (*Id.* at 31-32.) There is simply no argument in fact or law to support a purported conspiracy between the bankruptcy court and an attorney to "eliminate" the Debtor's rights. (*Id.* at 32.)

### c. Order Directing Disgorgement of Payments Made to Ocwen

The Debtor's fifth argument is that the bankruptcy court erred in directing disgorgement of payments made to Ocwen. (ECF No. 24 at 32.) The bankruptcy court "directed Ocwen and beach club to account for the funds they received from the Trustee in this case to determine if overpayments were made." (ECF No. 27 at 29.) Ocwen "agreed to return to the Debtor all funds it received from the Trustee in this case, $11,383.83 . . . ." (*Id.*) The bankruptcy accepted the proffer, to which the Debtor did not object. (*Id.*) Ocwen claims that it timely made the disgorgement payments, which the Debtor does not dispute. (ECF No. 27 at 12.)

While the gist of the Debtor's fifth argument is unclear, it appears that she takes no issue with having received the $11,383.83 disgorged from Ocwen, but she believes Ocwen should have been held in contempt and subject to punitive damages for receiving that amount from the Trustee in the first place. The Debtor claims that Ocwen received those funds in "***willful violation***[]" of a stay order (ECF No. 24 at 24 (emphasis in original)), but, as the Appellees point out, there was no stay in effect during the relevant time period. Specifically, although the Debtor appealed the denial of her motion to stay disbursement of trust funds from the Trustee to Ocwen, she never expressly moved for a stay pursuant to Federal Rule of Bankruptcy Procedure 8007. As a rule, an appeal does not automatically stay the enforcement of a judgment or related disbursements. *See* Fed. R. Civ. P. 62; Fed. R. Bankr. P. 8007. The Debtor offers no authority for the proposition that the Court should, much less may, deviate from these clear rules of procedure. This issue also precludes the Court from agreeing with the Debtor's sixth argument, which challenges the transfer of certain funds from her trust account into an "unclaimed funds" account in the bankruptcy court. It appears that the Debtor is arguing that that transfer violated a stay, but, as explained above, no stay was in effect because a notice of appeal does not automatically stay enforcement of the judgment on appeal.

### 4. Conclusion

The Debtor has not established reversible error and the Court, upon *de novo* review of all legal determinations, has found no clear error. Having reviewed the parties' briefing, the relevant legal authorities, and the record

before it, the Court **affirms** the bankruptcy court's decision. The Clerk is directed to **close** this case and **deny** any pending motions as moot.

**Done and ordered**, at Miami, Florida, on December 9, 2020.

Robert N. Scola, Jr.
United States District Judge